IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

RICHARD W. ARMSTRONG, HARRY
BRADSHAW, JUDITH BRADSHAW,
STEPHEN MCNALLY AND VOMCK, LLC                                           **PLAINTIFFS**

V.                                                        **CASE NO. 1:24-CV-00103-LG-RPM**

CITY OF LONG BEACH, MISSISSIPPI;
MICHAEL GUNDLACH; LOUIS DEWITT
ROBERTS;  ALAN J. SIMMONS; AJS
PROPERTIES, LLC;  AEROCARE
HOLDINGS, LLC; AND, JOHN DOES 1-25                                       **DEFENDANTS**

---

### SECOND AMENDED COMPLAINT

COMES NOW, your Plaintiffs, Richard W. Armstrong, Harry Bradshaw, Judith Bradshaw, Stephen McNally and VOMCK, LLC, and file this, their Second Amended Complaint and would show unto the Court as follows, to wit:

### I.    PARTIES, VENUE AND JURISDICTION

1)      Plaintiff, Richard W. Armstrong, is an adult citizen resident of Harrison County, Mississippi who may be served at 7230 Turner Road, Long Beach, Mississippi 39560.

2)      Plaintiff, Harry C. Bradshaw, is an adult citizen resident of Long Beach, Mississippi residing at 20066 Commission Road, Long Beach, Mississippi 39560.

3)      Plaintiff, Judith J. Bradshaw, is an adult citizen resident of Long Beach, Mississippi residing at 20066 Commission Road, Long Beach, Mississippi 39560.

4)      Plaintiff, Stephen M. McNally, is an adult citizen resident of Long Beach Mississippi residing at 20073 Commission Road, Long Beach, Mississippi 39560.

5)    Plaintiff, VOMCK, LLC, is a Mississippi limited liability company in good standing with the state of Mississippi, whose principal address is 20073 Commission Road, Long Beach MS 39560.

6)    Defendant, City of Long Beach, Mississippi ("City"), is a municipal corporation organized and existing in Harrison County, State of Mississippi, amenable to service through its Mayor, George L. Bass and/or its Municipal Clerk, Stacey Dahl, at Long Beach MS, City Hall, 201 Jeff Davis Ave., Long Beach, MS 39560, and/or however or wherever else it may be found. The City is a person for the purposes of 42 U.S.C. 1983 and may be named directly as a defendant.

7)    Defendant, Michael Gundlach, is the current Building Official and Floodplain Administrator of the City of Long Beach and the Administrator under the City of Long Beach Unified Land Use Ordinance ("ULUO"). He formerly held the title of Zoning Enforcement Officer. He may be served with process at 713 Old Savannah Drive, Long Beach, Mississippi 39560 and/or however or wherever else he may be found. Mr. Gundlach is being named in his individual and official capacity.

8)    Defendant, Louis Dewitt Roberts ("Mr. Roberts"), is an adult resident and domiciliary of the State of Mississippi, amenable to service of process at 20122 Lovers Lane, Long Beach, Mississippi 39560, and/or wherever or however else he may be found. He is a co-conspirator in the schemes to unlawfully develop 6005 and 6011 Daugherty Road, depriving Plaintiffs of their civil rights, decreasing Plaintiffs' property values, and disrupting Plaintiffs' quiet enjoyment of their properties. Mr. Roberts has a close relationship with Alan J. Simmons, such that they share common interests and motives.

9)    Defendant, Alan J. Simmons ("Mr. Simmons"), is an adult resident and domiciliary of the State of Mississippi, amenable to service of process at 5640 Ahuawa Place, Diamondhead,

Mississippi 39525, and/or wherever or however else he may be found. Mr. Simmons has a close relationship with Mr. Roberts. He is a co-conspirator in the scheme to unlawfully develop 6005 and 6011 Daugherty Road while depriving the Plaintiffs of their civil rights, decreasing their property values, and disrupting their quiet enjoyment of their residential properties. Mr. Simmons and Mr. Roberts share common interests and motives. After working for Mr. Roberts, Mr. Simmons purchased a business and property from Mr. Roberts and kept Mr. Roberts on as an agent. The unlawful acts of Mr. Simmons and AJS Properties, LLC are a continuation of the unlawful acts begun by the other Defendants.

10)    Defendant, AJS Properties, LLC, ("AJS"), is a domestic Mississippi limited liability company, amenable to service of process through its registered agent, Alan J. Simmons, 5640 Ahuawa Place, Diamondhead, MS 39525, and/or wherever or however else it may be found. It is the alter ego of Mr. Simmons.

11)    Defendant, AeroCare Holdings, LLC (MS Business ID 1365232) ("AeroCare"), is a foreign limited liability company registered to do and doing business in the State of Mississippi and formed in Delaware. AeroCare Holdings, LLC is amenable to service of process through its registered agent, Dan Bunting, 1809 29th Avenue, Gulfport, MS 39501, and/or however or wherever else it may be found.  Upon information and belief, AeroCare Holdings, LLC is the lessor of 6003 Daugherty.

12)    Defendant, John Does 1-25 ("John Does"), are persons unknown to the Plaintiffs that participated in the wrongful acts described herein. John Does 1-25 are likely City insiders. (All Defendants collectively referred to hereafter as the "Defendants").

13)    The Defendants have violated Plaintiffs' civil rights, property rights and circumvented constitutionally required processes guaranteed by the United States Constitution, the

Constitution of the State of Mississippi, the Mississippi Code and the Ordinances of the City of Long Beach related to the failures to provide notice, failure to hold hearings, failure to make findings, refusals to hear Plaintiffs' and Plaintiffs' counsel at public hearings, refusal to receive Plaintiffs' petitions to the local government, and otherwise legislating, finding and ruling unreasonably, unlawfully, arbitrarily, capriciously and contemptuously regarding zone map amendments, *de facto* variances, *de facto* zone map amendments, building permits, certificates of occupancy for 6005 and 6011 Daugherty Road, deliberate failures to execute ministerial duties, denial of access to procedures for relief before the City and creating new zones for the Defendants.

14)    Defendants acts and omissions give rise to causes of action based on denial of procedural and substantive due process, equal protection of law, denial of access to City administrative, legislative, and judicial processes and conspiracy to deprive the plaintiffs of their constitutional rights and property rights.

15)    This matter was removed from the Chancery Court of the First Judicial District of Harrison County, Mississippi by the City of Long Beach and Mr. Gundlach on the basis of federal question jurisdiction.

16)    Jurisdiction for this case is premised on 28 U.S.C. §§ 1331 and 1367 and 42 U.S.C. §§1983, 1988.

17)    Venue is proper under 28 U.S.C. § 1391 in the Southern District of Mississippi as the acts and omissions complained of occurred therein.

18)    Thus, jurisdiction and venue is proper and can be asserted by this Court without offending traditional notions of justice.

19)    One suing under 42 U.S.C. §1983 need not exhaust administrative remedies.  In this case, Plaintiffs attempted to avail themselves of administrative remedies, attended meetings

and attempted to initiate proceedings for relief. but were denied the right to speak and had applications and complaints wrongfully refused and dismissed without action, hearing or submission to the decision-making body on the basis City "policy" and "custom" based off tendentious and malicious interpretations of the law blatantly in contradiction of the plain language of the ordinances. Further attempts for relief before the City would be futile.

20)    The City failed to give notice, and make findings required to amend the Zoning Map or to grant variances and refused to receive and hear the application and complaint filed by counsel for Stephen McNally and VOMCK. Under these facts, the Court is not hearing an appeal under MISS. CODE §11-51-75 but sitting as the fact finder in a trial *de novo*.

21)    This Court has pendant jurisdiction over state law claims.

22)    Richard W. Armstrong ("Mr. Armstrong") is uniquely situated and harmed among the citizens of Long Beach. His former residential rental property, 6015 Daugherty Road, is contiguous with 6005 and 6011 Daugherty Road. His use of 6015 Daugherty Road was severely harmed by the unlawful acts of the Defendants, which forced him to sell.

23)    Harry and Judith Bradshaw (the "Bradshaws") are uniquely situated and harmed among the citizens of Long Beach. Their domicile is contiguous to 6005 Daugherty Road and the quiet enjoyment of their domicile has been invaded by the spot zoning at 6005 Daugherty Road and illegal commercial use of 6011 Daugherty Road, which is zoned residential. The Bradshaws have been further harmed by the Defendants at 6003 Daugherty Road. Mr. Simmons, AJS and /or AeroCare have installed bright-led flood lights that illuminate the Bradshaws' yard, and shine through their windows. The significant amount of rubbish generated by AeroCare, boxes and plastic bags that are disposed of in two dumpsters and a large box bin at 6003 Daugherty Road are insufficiently secured resulting in rubbish blowing into the Bradshaws' yard, onto Commission

Road, into neighboring residential properties and into the City drainage system. The dumpsters are loudly picked up weekly on Tuesday mornings, often before 6:00 a.m. and slammed. The Bradshaws' civil rights were violated when the City spot zoned 6005 Daugherty Road after May 2, 1996 and by the grant of unconstitutional *de facto* variances.

24)     Stephen McNally and VOMCK, LLC ("Daugherty Road Plaintiffs" or "DRP") are also uniquely situated and harmed among the citizens of Long Beach. DRP owns approximately 11 acres of residential property (a portion of which is split zoned commercial abutting Daugherty Road) that is contiguous with 6005 and 6011 Daugherty Road. Stephen McNally is domiciled 235' from 6005 Daugherty Road. Stephen McNally won an appeal in 1996 overturning a previous spot zoning of approximately 200' of the western portion of 6005 Daugherty Road (the approximately 200' western portion of 6005 Daugherty Road illegally spot zoned in 1995 and again after May 2, 1996 hereafter "200'SZ"). DRP had a zone map amendment application rejected based on a bad faith interpretation of the ULUO, an administrative complaint denied based on a bad faith interpretation of the ULUO, has been denied the right to speak at open public meetings opposing development at 6005 and 6011 Daugherty Road, and led the effort that stopped the City and John Does from spot zoning 5557 Daugherty Road for self-storage on March 25, 2021. DRP's civil rights were violated when the City spot zoned 6005 Daugherty Road after May 2, 1996, by the unconstitutional *de facto* variances and denial of access to procedures of the ULUO. DRP is also negatively impacted by the rubbish at 6003 Daugherty Road. DRP has been denied its First Amendment right to petition the City, suffered substantive and procedural due process violations and been denied equal protection of the law.

## II.     FACTS

25)     The foregoing paragraphs are realleged and adopted herein.

26)     The Bradshaws have owned and resided at 20066 Commission Road, Long Beach, Mississippi, 39560 for twenty-three (23) years; the land had been in the Bradshaw family for approximately ninety (90) years.

27)     Stephen McNally owns his domicile at 20073 Commission Road, Long Beach, Mississippi, 39560, also identifiable by tax parcel number: 0511I-02-003.001 and has lived has lived at the west end of Commission Road for over thirty (30) years.

28)     VOMCK, LLC owns real property identifiable by tax parcel numbers: 0511H-03-009.000 and 0511H-03-010.000.

29)     Richard W. Armstrong purchased 6015 Daugherty Road, identifiable as tax parcel number: 0511H-03-007.000, on April 21, 2011; sold the property to Brandi Viator on May 6, 2022; who then sold 6015 Daugherty Road to AJS Properties, LLC on December 5, 2022.

30)     Sometime prior to 1996, the City adopted a Zoning Map ("1996 Map").

31)     In the 1996 Map, properties near the Daugherty Road and Commission Road intersection fronting the west side of Daugherty Road were zoned commercial to a depth of approximately 200'. Many properties were split zoned with the eastern portion being commercial and the western portion residential.

32)     In 1995, 6005 Daugherty Road, also identifiable by tax parcel number: 0511H-03-006.000, was split zoned and owned by Louis Dewitt Roberts.

33)     On or about 1995, Mr. Roberts applied to the City for a zone map amendment to make all of 6005 Daugherty Road commercial for the development of mini-warehouses.

34)     Mr. Roberts basis for the requested change was he didn't want his property split-zoned and he wanted to build mini-warehouses. Mr. Roberts made no claim there was mistake in the original zoning, a material change in the neighborhood, or a public need for mini-warehouses.

35)     Mr. Roberts was a City insider with close connections to City officials and employees.

36)     Stephen McNally opposed Mr. Roberts' application before the P&Z Com'n and BOA, showing there was no material change or need for material change as there were 175 vacant mini-warehouse units nearby, but the City granted the application. Portion of August 2021 Zoning Map ("2021 Map") depicting 6005 Daugherty Road and surrounding relevant properties attached hereto as **Exhibit "A"**.

37)     Stephen McNally appealed to the Harrison County Circuit Court. The Circuit Court found the rezoning of 6005 Daugherty Road from residential to commercial was, "…unreasonable, arbitrary and capricious." The Order of the Harrison County Circuit Court ("1996 Order") stated in part:

> "In the case at bar, the Court finds no substantial evidence, much less clear and convincing evidence, that there was any mistake in the original zoning ordinance, or that the character of the neighborhood had changed and there was a public need for rezoning the property in question. Mr. Roberts presented only that his property was split zoned, and he wanted it all zoned as commercial property so that he could build mini warehouses on all his property, which he thought would be a good use for the property. On the other hand, Mr. McNally presented by way of a letter and sketch introduced at the Board hearing that there had been no change in the neighborhood, and also affirmatively stated his investigation revealed there were 175 vacant mini storage units within a 3-mile radius of the Roberts property."

1996 Order attached hereto as **Exhibit "B"**.

38)     Members of the Board of Alderman, John Does 1-25 and Mr. Roberts harbored malice toward Stephen McNally for preventing the spot zoning of 200'SZ.

39)     This harbored malice led the Defendants to take vindictive action and to act with illegitimate animus towards Plaintiffs.

40)    On November 6, 2002, the Defendants again spot zoned 6005 Daugherty Road commercial by improperly using the Comprehensive Rezoning Procedure to spot zone 6005 Daugherty Road.

41)    The Defendants failed to provide adequate notice to the Plaintiffs – the legal description was intentionally vague ("2002 Legal Description"). Legal descriptions from November 6, 2002 Minutes attached here at Exhibit "C".

42)    The 2002 Legal Description was intentionally insufficient and deviated from other legal descriptions utilizing the margins of other tax parcels.  The calls related to other tax parcels included language indicating the margin used and direction traveled and termination points, such as, "…thence south along the centerline of Daughtery Road to the southeast corner of tax parcel #0511I-02-005; thence west along the south margin of said parcel to the southwest corner…", instead of the 2002 Legal Description for 6005, "…to the north margin of tax parcel #0511H-03.003 [6005]; thence west, south and east to the north east corner of tax parcel #0511H-03.003…".  The call does not reference the margin or corners of 6005 and gives no indication of how far west, south and east the zone line is traveling – it is an ambiguous meaningless call.

43)    The Defendants knew from the 1996 Order that their acts were illegitimate.

44)    The Defendants did indirectly that which they had been prohibited from doing directly in the 1996 Order. See Exhibit "B".

45)    The Defendants knew 6005 Daugherty Road did not meet the stringent requirements for rezoning and if the actual notice or an accurate legal description were provided to Plaintiffs they would be opposed and defeated.

46)    Spot zoning 200'SZ from residential to commercial was for the benefit of Mr. Roberts, AJS, and Mr. Simmons ("Daugherty Road Defendants") and not related to the community as a whole.

47)    The Zoning Map of the City clearly shows 6005 Daugherty Road was singled out for preferential treatment denied to other similarly split zoned properties on Daugherty Road. 2021 Zoning Map incorporated by reference herein.

48)    The Defendants unlawfully avoided the stringent procedural requirements for rezoning because it was impossible for them to satisfy: mistake was precluded by the 1996 Order, and the other two: (1) material change in the neighborhood and (2) a public need for self-storage had not, and still have not, occurred.

49)    The decision to rezone 200'SZ in 2002 was contemptuous, arbitrary, capricious, and unreasonable.

50)    The City was required to provide actual notice to the Plaintiffs to provide adequate due process as required by the U. S. Constitution and Mississippi Constitution.

51)    The second spot zoning is especially unusual as the 1996 Order informed the City and Mr. Roberts 200'SZ could not be zoned commercial under the facts then existing and the legal description deviated from the standard used for all others.

52)    The notice and legal description published by the City was not reasonably calculated to provide notice.

53)    The spot zoning of 200'SZ created a peninsula of intense commercial use in a sea of residential properties and is an aberration.

54)    The commercial zoning of 200'SZ decreased the value of the Plaintiffs' property as potential residential buyers face the specter of the current disruptions and disturbances the

Plaintiffs are suffering, which is negatively effecting the enjoyment of residential use of the Plaintiffs' properties.

55)    The true harm from the City's earlier unlawful spot zoning is the realization of said zoning with commercial use within the 200'SZ, which did not occur until January 2022. The commercial use has interfered with Plaintiffs' quiet enjoyment and diminished the value of Plaintiffs' properties and, as such, the harm is no longer inchoate, but actual.

56)    The Daugherty Road Defendants (Mr. Roberts, Mr. Simmons and AJS) and John Does benefit from the unlawful rezoning by obtaining commercial property at a residential price, increased value of their property and ability to generate higher profits with more intense land use.

57)    The City and John Does benefitted by providing preferential treatment to a City insider, by unlawfully abusing power to punish Stephen McNally for exercising and attempting to exercise his civil rights to oppose spot zoning and increasing tax revenues.

58)    Mr. Simmons and AJS Properties currently own:

    a.    6003 Daugherty Road, tax no: 0511H-03-002.000;

    b.    6005 Daugherty Road, tax no: 0511H-03-006.000;

    c.    6011 Daugherty Road, tax no: 0511H-03-008.000; and,

    d.    6015 Daugherty Road, tax no: 0511H-03-007.000.

(Collectively "Simmon's Properties").

59)    AJS acquired 6005 Daugherty Road from Mr. Roberts in 2018 via a subsequent transfer from 6005 Daugherty, LLC, which was a limited liability company associated with Mr. Simmons.

60)    Mr. Simmons and AeroCare caused or allowed LED flood lights to be installed at 6003 Daugherty Road that illuminate the Bradshaw's home and neighboring residential properties, invading through windows, doors, and yards.

61)    The lighting at 6003 Daugherty Road is prohibited by ULUO §163. ULUO §163 incorporated herein by reference.

62)     Mr. Simmons and AerorCare directed, caused or allowed two dumpsters and a carboard box bin to be improperly used, resulting in trash blowing onto the Plaintiffs' properties and to other residential properties, into the roadway and the City's drainage system.

63)    The dumpsters and cardboard box bin are not properly secured or screened from residential properties as required by ULUO §170. ULUO §170 incorporated by reference.

64)    Simmons or one of his limited liability companies purchased Mr. Roberts' business, Dealer Services, Inc., which sold insurance and finance products to vehicle dealerships, such as gap insurance and extended vehicle warranties, in 2012.

65)    Mr. Roberts worked as a subagent for Mr. Simmons at Dealer Services, Inc., located at 6005 Daugherty Road.

66)    The Daugherty Road Defendants have a close relationship.

67)    AJS and Mr. Simmon's acts at 6005 and 6011 Daugherty Road are a continuation of a scheme begun by Mr. Roberts and the City. Mr. Simmons stands in Mr. Roberts' shoes, having realized, benefitted from and furthered the original unlawful acts and contributions to the Defendants' conspiracy to deprive the Plaintiffs of their civil rights to unlawfully commercially develop 200'SZ and 6011 Daugherty Road.

68)    On February 25, 2021 the P&D Com'n heard Alan J. Simmons application for planning commission approval to use 6005 Daugherty Road for a self-storage building.

69)    Stephen McNally attended the meeting to oppose the application but the Building Dept. Clerk, Tina Dahl, refused to let him address the P&D Com'n. to oppose Mr. Simmons.

70)    The Building Dept. Clerk, Tina Dahl, was enforcing a City Policy which denies citizens the right to be heard in opposition to agenda items at public meetings where the applicant and City agents are allowed to speak.

71)    The P&D Com'n approved Alan J. Simmons' application for self-storage at 6005 Daugherty Road.

72)    The BOA approved the February 25, 2021 P&D Com'n minutes on March 2, 2021 before the time for appeal had run.

73)    Stephen McNally conclusively learned of the second spot zoning of 6005 Daugherty Road on February 25, 2021.

74)    The Bradshaws learned of the second spot zoning sometime after February 25, 2021.

75)    Mr. Armstrong learned of the second spot zoning sometime after February 25, 2021.

76)    On March 25, 2021, Malcom Jones, Esq., on behalf of Stephen McNally, successfully opposed a proposed zone text amendment ("a wolf in sheep's clothing") as being unlawful spot zoning, which would have allowed the Columbian Knights of Long Beach to sell 5557 Daugherty Road, zoned residential, to recover the properties non-conforming use status, for the purpose of selling the property for use as mini-storage.

77)    5557 Daugherty Road is approximately three-tenths (3/10) of a mile from the Plaintiffs' properties.

78)    Stephen McNally informed the adjacent residential property owners of the proposed zone text amendment and the effect it would have on 5557 Daugherty Road.

79)    Over forty-one (41) residential owners signed Stephen McNally's petition opposing the zone text amendment.

80)    The Defendants harbored malice towards Stephen McNally for stopping the unlawful zone text amendment intended to spot zone 5557 Daugherty Road for self-storage.

81)    The only two properties involving self-storage development Stephen McNally has opposed in thirty-seven (37) years of owning self-storage and being domiciled in Long Beach are 5557 Daugherty Road and 6005 Daugherty Road.

82)    Long Beach has over twenty (20) mini-storage facilities.

83)    Stephen McNally's objections to the spot zoning attempted at 5557 Daugherty Road and occurring at 6005 Daugherty Road have always been grounded and based on the negative impact the commercial use would have on the use, enjoyment and value of residential property and the failure of the Defendants to meet the elements required to rezone said properties.

84)    On June 10, 2021 Mike Gundlach issued a Building Permit for a self-storage building to AJS Properties, LLC for 6005 Daugherty Road ("2021 Permit"). The Permit is dated as having been issued before the Application for Building Permit was even submitted to the City. Permit attached hereto as **Exhibit "D"**.

85)    On June 15, 2021, Alan Simmons filed an Application for Building Permit for self-storage at 6005 Daugherty Road ("2021 Building App."). Application attached hereto as **Exhibit "E"**.

86)    The 2021 Building App. depicts a driveway and building being constructed within a legitimate commercial portion of 6005 Daugherty Road. No other development is shown.

87)     The 2021 Building App. and 2021 Permit process were deficient in that the Building Department and Mr. Gundlach failed to exercise the ministerial oversight required by the ULUO.

88)     The 2021 Building App. appears to be an application for variance as the mini-storage building had been built inside the side setback line. C3 zones require a 5' side setback. The ministorage building is 1.7' from the side property line on the east corner and 2.8' on the west corner. No variance was requested or granted. By Defendants' design, Plaintiffs had no opportunity to be heard or take an appeal.

89)     Plaintiffs had no advance notice of a planned setback violation, as the City and Mr. Gundlach colluded and conspired with Mr. Simmons and AJS by accepting a facially incomplete application for a building permit.

90)     The City and Mr. Gundlach's acceptance of the incomplete 2021 Building App. was unreasonable, arbitrary, and capricious.

91)     Mr. Simmons, and AJS Properties conducted substantial unpermitted development at 6005 Daugherty Road (owned by AJS Properties in 2021) and 6011 Daugherty Road (Alan Simmons' claim of ownership 2021) in violation of the ULUO, with the City's approval.

92)     Contemporaneously with the construction of the mini-storage building, Mr. Simmons and AJS Properties constructed approximately 16,000 sqft. commercial limestone parking lot ("Parking Lot") in the 200'SZ for use as open parking rental spaces and cleared 6011 Daugherty Road.

93)     Commercial parking lots require approval of the P&D Com'n before construction, yet no application was submitted and no approval given. ULUO §105 incorporated herein by reference.

94) Mr. Simmons and AJS materially altered the natural contours and drainage flow of 6005 and 6011 Daugherty Road while clearing and constructing the Parking Lot. The new grading, swales, and berms were designed to collect, concentrate, and discharge excess surface water by artificial means onto VOMCK land, in violation of ULUO and common law.

95) Mr. Robert's son, Timothy Roberts, performed dirt work, grading and building drainage structures at 6005 and 6011 Daugherty Road for Mr. Simmons and AJS.

96) Stephen McNally made complaints to the City regarding the unlawful development at 6005 Daugherty Road.

97) Mr. Gundlach was the City Officer that responded to Stephen McNally's complaints regarding drainage in 2021.

98) Mr. Gundlach chose to ignore obvious alterations of the natural contours and the resulting overburdening of the VOMCK land along the access path to the VOMCK barn.

99) Ruts on the VOMCK land correlated directly with the point of concentrated surface water discharged and flowing from 6005 and 6011 Daugherty Road and corroborate Mr. McNally's complaints that he could not access his barn without damaging his property and vehicles after rain events.

100) Mr. Gundlach filmed ruts on the access path to the barn on the VOMCK property on October 1, 2021, decided they weren't that bad, that the VOMCK land grass should be cut more often, excusing the drainage violations from 6005 and 6011 Daugherty Road.

101) Mr. Gundlach completely failed to document the swales, grading and fill for the Parking Lot causing the drainage issues on 6005 and 6011 Daugherty Road.

102) Mr. Gundlach's tendentious inspection was intended to, and successfully allowed Mr. Simmons and AJS to skirt the ULUO requirements, intentionally damage Stephen McNally

and VOMCK while further violating their civil rights to a hearing regarding variance from the ULUO: Article XV: Storm Water Management ("Storm Water Article").

103)    Unsurprisingly, Mr. Gundlach has known Mr. Simmons and his brother for forty-five (45) years.

104)    Mr. Simmons and AJS did not submit an application for a permit for the commercial Parking Lot as required by ULUO §§35, 105. Incorporation by reference to ULUO §§35, 105.

105)    A commercial parking lot is not permitted under the ULUO in a residential zone.

106)    Mr. Simmons and AJS never received a certificate of use or occupancy for the Parking Lot. Incorporation by reference to ULUO §36.

107)    There was no application to the City for a P&D Com'n approval permit as required by ULUO §105 or review and approval by the city engineer as required by the ULUO §204. By Defendants' design, there was no fair hearing or opportunity for Plaintiffs' opposition to be heard or an appeal taken. Incorporation by reference to ULUO §§105, 204.

108)    The construction of the commercial parking lot increased the impervious surface area of 6005 Daugherty Road above 50%, which triggered ministerial application of the Storm Water Article. The only means of avoidance is a variance from the BOA. None was requested or granted. By Defendants' design, there was no opportunity for Plaintiffs' oppositions to be heard or appeal taken.

109)    The construction of the commercial parking lot caused 6005 Daugherty Road to exceed the Coverage Maximum for C3 zones.[1] No variance was requested or granted. By Defendants' design, there was no opportunity for Plaintiffs' oppositions to be heard or an appeal taken. Incorporation by reference is made to ULUO §142.

---

[1] The coverage maximum for an R4 zone is also 45%.

110)    Mr. Simmons and AJS constructed a 6' tall chain-link fence topped with three strands of barbed wire without submitting an application for a fence permit, receiving a fence permit, or disclosing that fence would be built.

111)    ULUO §95(f) holds that is to be less intensive than C2 zones, provide a transition to residential zones and that the City encourages the use of house-form structures in C3. Incorporation by reference is made to ULUO §95(f).

112)    The three strands of barbed wire are out of character for residentially zoned, or C3 zoned properties abutting residential zones, such as 6005 Daugherty Rd.

113)    Defendants ignored ULUO §95(f) by way of the chain-link and barbed wire fence.

114)    The Parking Lot, the fence, and all alterations to the natural contours of 6005 and 6011 Daugherty Road should be removed by Mr. Simmons and AJS and the natural contours and conditions restored.

115)    Despite the numerous glaring violations of the ULUO by Mr. Simmons and AJS, the City unlawfully issued a certificate of occupancy without authority.

116)    The City must abide by all sections of the ULUO.

117)    The City is not free to disregard the ULUO.

118)    The City does not have the authority to grant certificates of occupancy to properties in violation of the ULUO that have not received variances. Incorporation by reference to ULUO §36.

119)    The unlawful certificates of occupancy are void *ab initio* and absolute nullities.

120)    Mr. Simmons and AJS have no lawful authority to use the mini-storage building or parking lot on 6005 Daugherty Road or the metal warehouse building on 6011 Daugherty Road until all sections of the ULUO have been followed.

121)    The granting of a certificate of occupancy for 6005 Daugherty Road, while numerous violations of the ULUO existed, unlawfully created a Zone of One for the Defendants – a zone which is not contained or defined in the ULUO and of which no Plaintiff was given notice.

122)    Mr. Armstrong was forced to sell his home at 6015 Daugherty Road on May 6, 2022 after unsuccessfully attempting to secure a new tenant to replace his former tenant after Mr. Simmons and AJS impaired the use of 6015 for residential use.

123)    In 2021, Mr. Armstrong's tenant's peaceful and quiet enjoyment of his leasehold at 6015 Daugherty Road was disturbed when Mr. Simmons and AJS encroached onto the leasehold, clearing 15-20 feet onto 6015 Daugherty Road, and knocking down the fence along the west property line.

124)    After the encroachment, the privacy of the rental home on 6015 was lost and the backyard and rear of the home was fully exposed to the unlawful commercial developments of the Defendants at 6005 and 6011 Daugherty Road.

125)    In addition to the encroachment a portable construction toilet was placed on the property line of 6015, near the residential rental home.

126)    The peaceful and quiet enjoyment of 6015 was further disrupted by the sounds of unlawful commercial construction and commercial use, including the vehicles and customers accessing 6005 Daugherty Road.

127)    Mr. Simmons would frequently force Mr. Armstrong's tenants to move their vehicles, despite the vehicles not being in the easement to 6015 Daugherty Road or in any way obstructing Mr. Simmons use or access.

128)    The rental value and property value of 6015 Daugherty Road was greatly diminished.

129)    6015 Daugherty Road formerly drained to the south, across 6005 and 6003 Daugherty Road to the roadside ditch on Commission Road.

130)    The filling and construction of the Mini-Storage building on 6005 Daugherty Road damned the surface water on 6015 Daugherty Road, further limiting use and decreasing value.

131)    Mr. Armstrong was forced to list 6015 Daugherty Road for sale and the property was sold grossly below value to Brandi Viator.

132)    AJS subsequently purchased 6015 Daugherty Road from Brandi Viator, a realtor and partner at Southern Magnolia Realty with Sarah Renken.

133)    Upon information and belief, Brandi Viator was AJS's realtor and Brandi Viator and AJS did not disclose the relationship.

134)    Upon information and belief, Sarah Renken and Brandi Viator worked together with Mr. Simmons and AJS Properties in forcing a lower sales price of 6015 Daugherty Road.

135)    Brandia Viator and Sarah Renken knew AJS would buy 6015 Daugherty Road before they closed on May 6, 2022.

136)    Mr. Armstrong should recover, as actual damages, the fair market value of 6015 Daugherty Road as of May 6, 2022, at value and appraisal as though none of the unlawful acts and developments occurred at 6005 and 6011 Daugherty Road and tenant occupied at rental value.

137)    Mr. Armstrong should recover the difference in the sale price between his sale to Brandi Viator and her sale to AJS.

138)    On September 1, 2022, Matt McDade, Esq., on behalf of Stephen McNally, filed an application for a zone map amendment ("McDade App.") with Mr. Gundlach to address the mistake in zoning at 6005 Daugherty Road. McDade App. attached hereto as **Exhibit "F"**.

139)    On September 22, 2022, the City and Mr. Gundlach refused to deliver the McDade App. to the P&D Com'n. The City and Mr. Gundlach relied upon a strained interpretation of the ULUO which limited applications for zone map amendments to the owners or agents of the subject property, which was contrary to the plan language of the ULUO. City and Mr. Gundlach's response to the McDade App. "McDade Rejection" attached hereto as **Exhibit "G"**.

140)    §218 of the ULUO reads, "Any other person may also petition the Board of Alderman to amend this ordinance." Incorporation by reference is made to ULUO §218.

141)    As the process for "[a]ny other person" and the mayor and BOA is the same under the ULUO Article XIX – Amendments ("ZONING ARTICLE"), the interpretation of the City limiting the scope of application to property owned by the applicant, would result in the same limitation on the mayor and BOA. Mr. Gundlach would be required to similarly refuse to submit applications of the mayor and BOA to the P&D Com'n. unless the City owned the subject property. Incorporation by reference is made to ZONING ARTICLE.

142)    The interpretation by the City, and Mr. Gundlach is strained and in contradiction to the plain language of ULUO §218 and there is no rational conceivable basis supporting their interpretation of the ULUO.

143)    Their interpretation of ULUO §218 is so strained that it shocks the conscience and must be seen as the willful, malicious act it was to deprive Stephen McNally and VOMCK of their civil right to avail themselves of the procedure provided in the ZONING ARTICLE, and to discourage them from pursuing relief for the spot zoning of the 200'SZ.

144)    The McDade Rejection was made under the color of state law and was unreasonable, arbitrary, capricious and justifies a finding they acted with malice.

145)    By the Defendants' design, the McDade App. never went before the P&D Com'n, so to deny the Plaintiffs an opportunity to be heard or take an appeal.  See **Exhibit "G"** incorporated by reference herein.

146)    On May 8, 2023, Owen McNally, Esq., filed an Administrative Complaint ("Admin. Comp.") with the City, through Michael Gundlach, for violations of the ULUO occurring at 6005 Daugherty Road.

147)    On August 10, 2023, the response from the City to the Admin. Comp. was received by counsel for Stephen McNally. It was prepared by City Attorney, Stephen B. Simpson, Esq. Response from the City and Mr. Gundlach, through Mr. Simpson, ("Admin. Rejection") attached hereto as **Exhibit "H".**

148)    The Admin. REJ relied on a strained and contradictory interpretation of the plain language of the ULUO to a degree that shocks the conscience and amounts to a willful and unlawful act intentionally designed to deprive Stephen McNally and VOMCK of their right to petition the City under ULUO §76 and to discourage them from pursuing relief from the spot zoning of 200'SZ and numerous violations of the ULUO at 6005, and 6011 Daugherty Road.

149)    The Admin. REJ was made under the color of state law and was unreasonable, arbitrary, capricious and justifies a finding they acted with malice.

150)    On January 11, 2024, Stephen McNally, through Owen McNally, Esq., attempted to oppose an application for a certificate of re-subdivision submitted to the City by Alan J. Simmons to merge 6005 Daugherty Road, 6011 Daugherty Road, and 6013 Daugherty Road being held by the P&Z Com'n.

151)    Stephen McNally has an ownership interest in 6011 Daugherty Road through quitclaim deeds acquired from the former owners' heirs-at-law. Alan Simmons claims ownership

through a tax sale. Stephen McNally has challenged the validity of the sale in the Harrison County Chancery Court, First Judicial District.

152) Before the P&D Com'n public hearing on January 11, 2024 to consider the application for a certificate of re-subdivision, Stephen McNally provided documentation to the City showing he had an ownership interest in 6011 Daugherty Road ("Due Process Packet").

153) Before the January 11, 2024 meeting, Mr. Gundlach, upon the instruction of City Attorney Stephen B. Simpson, rejected the Due Process Packet and returned it to Stephen McNally and said it would not be part of the record.

154) Mr. Gundlach with the Clerk, Ms. Tina Dahl, directed Stephen McNally and Owen McNally, Esq., to not speak at the meeting.

155) During this exchange, Ms. Tina Dahl stated she would not record Stephen McNally's opposition or presences in the P&D Com'n minutes.

156) Owen McNally, Esq. attempted to oppose the application during the hearing, but he was told he could not speak and would have to appeal.

157) The P&D Com'n by motion and vote required Owen McNally's request to oppose the application be recorded in the minutes.

158) Stephen McNally received no actual notice of the application or hearing set for January 11, 2024, and only became aware of it one day before the hearing, which is insufficient advanced notice to satisfy due process.

159) Upon information and belief, the City did not publish notice of Alan J. Simmons' application taken up on January 11, 2024.

160)    On January 16, 2024, the BOA approved the January 11, 2024 P&Z Com'n minutes, before the ten (10) day period for appeals had tolled, in violation of the civil rights of the Plaintiffs.

161)    On February 6, 2024, Stephen McNally's appeal of the January 11, 2024 P&Z Com'n meeting was taken up by the BOA. The BOA voted to amend their approval of the January 11, 2024 minutes to exclude Alan J. Simmons' application for a certificate of re-subdivision.

162)    On or about February 6, 2024, Alan Simmons and AJS Properties, LLC constructed a metal warehouse building on an existing slab at 6011 Daugherty, intending it would be used for commercial purposes in violation of the residential zoning of 6011 Daugherty.

163)    Alan Simmons and AJS Properties, LLC 's incomplete building permit was received and approved, in part, due to the unlawful approval of the January 11, 2024 P&D Com'n meeting minutes by the BOA on January 16, 2024.

164)    The City and Mr. Gundlach knowingly approved a commercial building to be built in a residential zone.

165)    Commercial activity at 6011 Daugherty Road includes the storage, loading and unloading of material and equipment, for commercial purposes, with a forklift that beeps loudly.

166)    While the appeal to the Board of Alderman from the January 16, 2024 meeting partially cured the due process violation, the longstanding policies and customs of the City which allowed the violation persist as does a portion of the harm: the building permit for 6011 Daugherty Road was issued, the building was built and is still in use.

167)    People other than Alan J. Simmons are working at 6011 and are believed to be employees, partners, contractors or tenants.

168)    Plaintiffs are disturbed by the beeping of the forklift and the other sounds generated by the commercial use of 6011 Daugherty Road, with the Bradshaws' peaceful and quiet enjoyment of their home being more affected, as it is only 108' from the building, and the loud beeping disturbs them in their home and in their yard.

169)    The City, Mr. Gundlach, Mr. Simmons and AJS *de facto* spot zoned 6011 Daugherty Road for Mr. Simmons and AJS Properties.

170)    The City, and Mr. Gundlach had a duty to abide by the ULUO, to execute ministerial duties and provide due process to the Plaintiffs.

171)    The City, Mr. Gundlach and John Does failed to provide due process to the Plaintiffs, failed to execute their ministerial duties and failed to abide by the ULUO.

172)    Defendants would have been required to approve any rezoning or variances by a supermajority vote if proper notice and hearing had been held.

173)    The City, Mr. Gundlach and John Does have gone to great lengths to unlawfully assist Mr. Roberts, Mr. Simmons and AJS with spot zoning, *de facto* variances, *de facto* spot zoning, a new undefined zoning classification, unlawful building permits and unlawful certificates of occupancy, all while actively denying Stephen McNally redress through the procedures set out in the ULUO and denying the Plaintiffs notice and hearing.

174)    The City, Mr. Gundlach and John Does benefit from the unlawful acts and omission by increasing taxation and revenues arising from the commercial property gifting and commercial use gifting to the Daugherty Road Defendants.

175)    Defendants have long harbored malice towards Stephen McNally for his exercise of his civil rights that foiled two of the Defendants past schemes to illegal spot zone property on Daugherty Road for self-storage for the benefit of City insiders.

176)    The Defendants harbored malice and sought to satisfy their harbored malice through a premeditated vendetta by damaging Stephen McNally's property, trampling his civil rights and his property rights, decreasing his property value, and causing him to incur enormous legal fees by intentionally denying him access to the natural and more affordable procedures that should have been readily available to him.

177)    The Defendants, in abusing their power to benefit the Daugherty Road Defendants and harm Stephen McNally, have caused similar harm to the other Plaintiffs who have been caught in the same net as Stephen McNally.

178)    The malice with which the Defendants acted to harm Stephen McNally must also be applied to the harm caused to the other Plaintiffs.

179)    The actions of the Defendants demonstrate reckless disregard and callous indifference for the property, well-being and civil rights of the Plaintiffs.

180)    The actions of the Defendants shock the conscience.

181)    The actions of the Defendants were not those of an ordinary and prudent person acting in good faith.

182)    The actions of the City and Defendants are unreasonable, arbitrary, and capricious.

183)    The City, Mr. Gundlach, Mr. Simmons, and AJS have acted with malice towards Stephen McNally and VOMCK.

184)    All of the foregoing acts and omissions were done by all the Defendants under the color of state law, in no small part due to the acts and omissions of Mr. Gundlach's through his various offices and roles.

185)    Mr. Gundlach, as the Building Official, Zoning Enforcement Officer, and Floodplain Manager, was delegated broad powers, to act without oversight, which included interpreting the ULUO and laws. He was a policymaker.

186)    Mr. Simmons and AJS would not have been able to construct the mini-storage building, driveway, fence, drainage structures and parking lot if they had followed the proper procedures and timely submitted the documents and things required by the ULUO - 6005 Daugherty Road is not large enough to support the structures built.

187)    Mr. Simmons and AJS would not have been able to construct the mini-storage building, driveway, and parking lot if the City and Mr. Gundlach had not been complicit in violating the ULUO - 6005 Daugherty Road is not large enough otherwise.

188)    The Defendants are charged with knowledge of the ULUO and of the laws and Constitutions of the United States and the State of Mississippi.

189)    The Defendants did not abuse comprehensive rezoning and rely upon ambiguous legal descriptions to overcome the opposition to spot zoning from Charles A. Boggs, Peggy Joyce Blakeny, Jack Donovan and numerous others, who were or are citizens of Long Beach similarly situated to the Plaintiffs.

190)    The Defendants did not create a Zone of One to overcome opposition to spot zoning from Charles A. Boggs, Peggy Joyce Blakeny, Jack Donovan and numerous others, who were or are citizens of Long Beach similarly situated to the Plaintiffs.

### III.    STATUE OF LIMITATIONS: FEDERAL CAUSES OF ACTION

191)    The foregoing paragraphs are realleged and adopted herein.

192)    42 U.S.C. 1983 causes of action in Mississippi use the general three-year statute of limitations of Miss. Code. §15-1-49.

193)   A 42 U.S.C. §1983 cause of action against a municipality may accrue when a harmful act results from a municipal policy or custom, rather than on the date of the harmful act. Ivan E. Bodensteiner and Rosalie Berger Levinson, *§1.24. 42 U.S.C.A. Section 1988: Application of State Saw to Section 1983 Claims- State Statutes of Limitations and Tolling Rules*, in S*tate and Local Government Civil Rights Liability* (May 2023 Update).

194)   A reasonable prudent person would not have discovered the second spot zoning until the 200'SZ was put to commercial use in January 2022.

195)   The intentional failure to provide notice of the second rezoning of 200'SZ, considering Stephen McNally's diligence in pursuing the 1996 Order and the preclusive effect the 1996 Order had, make application of the continuing violation theory equitable.

196)   Essential to the Defendants scheme was doing in the dark what they could not do in the light.

197)   The Defendants should not be rewarded for concealing their unlawful acts.

198)   The City has engaged in a pattern and practice of spot-zoning and attempting to spot-zone residential property for self-storage near the Plaintiffs' homes.

199)   Beyond the acts and omission at 6005 and 6011 Daugherty Road, the City also attempted to spot-zone 5557 Daugherty Road: in 2019 through illegal special use, and then in 2021, via a illegal zone text amendment.

200)   "The continuing violation doctrine is a federal common law doctrine governing accrual." ***Heath v. Bd. of Supervisors for S. Univ. &Agric. & Mech. Coll***., 850 F.3d 731, 740 (5th Cir. 2017). It is "equitable in nature and extends the limitations period on otherwise time-barred claims." ***Texas v. United States***, 891 F.3d 553, 562 (5th Cir. 2018) (quotations omitted). It "should be invoked 'sparingly,' only when the situation calls for it." ***Id***. In particular, "the continuing

violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." ***Cowell v. Palmer Tp***., 263 F.3d 286, 295 (3rd Cir. 2001). "To allow prisoners to sit on alleged violations of their rights would be 'contrary to the policy rationale of the statute of limitations.' Id."

201) This case calls for the application of the continuing violation theory.

   a. The Defendants scheme depended upon denying the Plaintiffs of constitutionally protected procedural and substantive due process;

   b. Had due process been followed, with advanced notice and public hearings, Stephen McNally would have opposed the spot zoning and other unlawful acts when they were before the City, as he did in 1996, 2019, and 2021 when notice was given; and,

   c. When a component of the violation of 42 U.S.C. 1983 is a failure of due process, the Defendants should not be allowed to benefit from concealing the violation.

202) The most recent violations of the ULUO, the Zoning Map, and the Plaintiffs state and federally protected civil rights occurred in February 2024, when Mr. Simmons and AJS, in conspiracy and with the collusion and cooperation of the City and Mr. Gundlach, constructed a metal warehouse building on 6011 for commercial use in a residential zone.

203) The 42 U.S.C. 1983 action is ripe and not barred.

### IV.    STATUTE OF LIMITATIONS: STATE CAUSES OF ACTION

204) The foregoing paragraphs are realleged and adopted herein.

205) Civil rights actions brought under the Mississippi Constitution are governed by a three (3) year statute of limitations. MISS. CODE 15-1-49.

206)    Mississippi causes of action accrue upon discovery of the injury, not discovery of the injury and its cause. Knowledge of the cause of the injury is irrelevant to the analysis; rather, the inquiry is when the plaintiff knew or should have known of an injury." ***Hood v. A &amp; A Excavating Contractors, Inc***., 338 So.3d 145 (Miss. App. 2022).

207)    [W]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease. Where the tortious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong. ***Miss. Dep't of Human Servs. v. S.W***., 111 So.3d 630 (Miss. App. 2013)

208)    The causes of action arising under the Mississippi Constitution and Mississippi law are ripe.

209)    The causes of action arising under the Mississippi Constitution and Mississippi law are not barred.

210)    The acts, and refusals to act, of the City, and Mr. Gundlach were all under the color of state law, acts taken in their official capacities, authorized by their official capacities and while executing their official duties.

211)    Mr. Roberts, Mr. Simmons, and AJS conspired and colluded with the other Defendants to deprive the Plaintiffs of federal and state protected rights, and procedures required by statute, ordinance, and common law.

212)    The acts complained of by the Plaintiffs are deliberate, unlawful, arbitrary, capricious, and unreasonable abuses of state power – a violation of Plaintiffs' federally protected substantive due process.

213)    Appeals under Miss. Code §11-51-75 are not an exclusive remedy when there is insufficient notice. ***Bailey v. Jefferson Cnty. Bd. of Supervisors***, 2022-CP-00950-COA (Miss. App. Sep 19, 2023) *see also **City of Jackson v. Jordan***, 202 So.3d 199, 203 (¶11) (Miss. 2016).

214)    Judgments are enforceable for seven (7) years. Miss. Code. 15-1-43.

215)    The 1996 Order is enforceable. See Exhibit "B".

216)    The legal description provided for 6005 in 2002 was intentionally ambiguous and concealed the zone change.

### V.    42 U.S.C. 1983: SUBSTANTIVE DUE PROCESS: ARBITRARY AND CAPRICIOUS REZONING

217)    The foregoing paragraphs are realleged and adopted herein.

218)    Plaintiffs' possess an expectation right that the zoning of neighboring property be stable and relatively permanent, subject only to rezoning after the required showing and findings have been made: mistake, change in the character of the neighborhood coupled with a need for the proposed use or a comprehensive zoning, which is must truly be comprehensive, as opposed to an administrative zone change focused on a single parcel, 6005.

219)    A challenge to a government's land-use decision that alleges the decision was arbitrary or capricious states a violation of substantive right and acquires a constitutional stature. ***Johnson v. City of Canton***, 194 So. 3d 161, 170 (¶36) (Miss. Ct. App. 2015),

220)    There is no conceivable rational basis for the City to spot zone 200'SZ a second time via comprehensive rezoning.  1996 Order. See Exhibit "B".

221)    The City, Mr. Gundlach and John Does, acting under color of state law, violated the Plaintiffs' federally protected substantive due process rights, harmed the Plaintiffs and should shock the judicial conscience.

## VI.    42 U.S.C. 1983: VIOLATION OF SUBSTANTIVE DUE PROCESS: ZONE OF ONE

222)    The foregoing paragraphs are realleged and adopted herein.

223)    Under Mississsppi law, excessive variances have been found to amount to a zone change.

224)    As violations of the ULUO by AJS and Mr. Simmons are not permitted in any zone found in the ULUO, and certificates of occupancy were granted despite the prohibition in the ULUO, the Defendants have created a *de facto* new zoning classification to accommodate Mr. Simmons and AJS.

225)    The creation of the new zoning classification is outside the reasoned zoning scheme of the ULUO and allows extremely intense commercial use of 6005 at the expense of the Plaintiffs' residential properties.

226)    The new zoning classification is unconstitutional.

## VII.    42 U.S.C. 1983: VIOLATION OF SUBSTANTIVE DUE PROCESS: VARIANCES & CERTIFICATES OF USE OR OCCUPANCY

227)    The foregoing paragraphs are realleged and adopted herein.

228)    The Plaintiffs' have an expectation right to notice, hearing and specific finds before a variance is granted to a neighboring property owner.

229)    ULUO §61 requires specific findings to be made for a variance to be granted. Incorporation by reference to ULUO §61.

230)    The City has made no findings supporting the *de facto* variances granted for 6005 Daugherty Road, and such grant was unreasonable, arbitrary, and capricious.

231)    There is no conceivable rational basis for the City to grant setback, coverage maximum or stormwater management variances for 6005 Daugherty Road.

232)    There is no conceivable basis for the City to grant certificate of use or occupancy when the City, Mr. Gundlach and John Does know there are violations of the ULUO.

233)    The City, Mr. Gundlach and John Does have no lawful authority to grant such certificate until all requirements of the ULUO have been followed. ULUO §36. *Noble v. Scheffler*, 529 So.2d 902 (Miss. 1988).

234)    The City, Mr. Gundlach and John Does, acting under color of state law, violated the Plaintiffs federally protected substantive due process rights and harmed Plaintiffs.

## VIII.    42 USC 1983: PROCEDURAL DUE PROCESS: LACK OF NOTICE FOR 2002 SPOT ZONING HIDDEN INSIDE COMPREHENSIVE REZONING

235)    The foregoing paragraphs are realleged and adopted herein.

236)    The substance of the zone change takes precedence over the misnomer provided by the City in 2002: the zone change for 6005 was not comprehensive just because other parts of the city were rezoned – it was narrowly tailored for the Defendants – it was spot zoning concealed inside a comprehensive rezoning. See *Modak-Truran v. Johnson*, 18 So. 3d 206 (Miss. 2009).

237)    Publication was insufficient for the spot zoning which occurred under the guise of a comprehensive zoning.

238)    The City failed to provide actual notice, as required by the City's own ordinances, but as must be had under these particular circumstances, which heighten the requirements of due process. *Tippah County v. LeRose*, 283 So.3d 149 (2019).

239)    The legal description published for the alleged zone changes for 6005 did not provide notice the entirety of 6005 was to be zoned C3.

240)    The Defendants failed to put on proof or make findings of the elements required to rezone a single parcel.

241) The Plaintiffs were harmed by the lack of proof and requisite findings, which were mandatory before 6005 could be rezoned, and could have easily prevailed on the merits had they been giving an opportunity to assert their rights.

### IX. 42 USC 1983: PROCEDURAL DUE PROCESS: ZONE OF ONE

242) The foregoing paragraphs are realleged and adopted herein.

243) The City must provide advanced notice and hearing before it amends the ULUO with a new zoning classification.

244) The Plaintiffs were harmed by the creation of the new zoning classification without procedural due process.

### X. 42 USC 1983: DENIAL OF DUE PROCESS FOR VARIANCES

245) The foregoing paragraphs are realleged and adopted herein.

246) The building permit issued by the City to Mr. Simmons and AJS was actually a variance. See ***Wheelan v. City of Gautier***, 332 S0.3d 851 (2022).

247) The certificates of occupancy could not be issued while violations of the ULUO were unaddressed – variances were required.

248) Variances require advanced notice, hearing and specific findings under the ULUO and Mississippi law.

249) The Plaintiffs have a right to advanced notice, hearing and specific findings. There is an expectation right that variances, and certificates of occupancy, will only be granted when the ULUO has been followed.

250) The Plaintiffs received no advanced notice of the variances granted to Mr. Simmons and AJS.

251) The Plaintiffs have been harmed and their federally protected due process rights violated.

### XI. 42 USC 1983: DENIAL OF ACCESS TO ULUO PROCEDURES

252)    The foregoing paragraphs are realleged and adopted herein.

253)    Stephen McNally and VOMCK have a First Amendment right to petition the government, and a right to avail themselves of procedures and remedies available under the ULUO.

254)    The interpretations relied upon by the City rejecting the McDade App. were unreasonable, arbitrary, capricious, and tainted with malice and violated the Plaintiffs federally protected rights. See Exhibit "F".

255)    The interpretations adopted by the City and Mr. Gundlach are absolutely incorrect and are unsupported by any rational basis.

### XII.    42 USC 1983: EQUAL PROTECTION OF THE LAW & RIGHT TO PETITION THE GOVERNMENT & THE MISSISSIPPI BILL OF RIGHTS: STEPHEN MCNALLY

256)     The foregoing paragraphs are realleged and adopted herein.

257)    The Fourteenth Amendment to the United States Constitution guarantees citizens equal protection of the law, and the right to petition the government for a redress of grievances.

258)    §24 of the Mississippi Bill of Rights states, "All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay."

259)    The Defendants conspired together to deprive Stephen McNally of equal protection of the law and his right to petition the City.

260)    Persons similarly situated to Stephen McNally have opposed efforts by the City and their neighbors to change residentially zoned property into commercially zoned property wherein the City did not resort to abusing the comprehensive rezoning process and utilizing ambiguous legal descriptions to achieve spot zoning.

261)    Charles A. Boggs, Peggy Joyce Blakeney, and Jack Donovan were all provided with actual advanced notice of an appropriately titled proceeding, had a meaningful opportunity to be heard and an opportunity to avail themselves of the familiar and statutory mechanism of appeal from local government under Miss. Code. §11-51-75.

262)    Stephen McNally was treated differently than Boggs, Blakeney and Donovan: he was not provided advanced notice, he was not given a meaningful opportunity to be heard or utilize the natural course of appeal as the course of action against him was concealed by a bogus legal description and abuse of procedure.

263)    Stephen McNally has been maliciously or arbitrarily singled out for discriminatory treatment in violation of his federally protected rights and state property rights.

### XIII.   HEARING *DE NOVO*

264)    The foregoing paragraphs are realleged and adopted herein.

265)    Alternatively, this Court may hear matters that the City failed to hear *de novo. Falco v. Lime, Inc.,* at 718 (Miss. 2002).

266)    There was insufficient notice of the 2002 spot zoning of 200'SZ.

267)    There was no hearing for setback, storm water management, or coverage maximum variances.

268)    There was no hearing for a special use, variances, or rezoning of 6011 Daugherty Road.

269)    This Court should assume original jurisdiction and authority over all hearings and matters that might have been brought through Mr. Gundlach, the P&D Com'n, the BOA or any other person or subsection of the City, touching or concerning 6003, 6005, 6011, or 6015 Daugherty Road until all claims herein are disposed of by this Court. *Wheelan v. City of Gautier,*

332 So.3d 863 (2021) (overruled on other grounds by **_Wheelan v. City of Gautier_**, 332 So. 3d 851 (Miss. 2022).

270)    This relief is necessary and proper to ensure that the Defendants do not further increase or complicate the restoration of the Plaintiffs rights and are estopped from wrongfully prolonging the resolution of this action, or unduly and unreasonably increasing costs, fees and expense.

### XIV.    DECLARATORY JUDGMENT: APPLICATION FOR ZONE MAP AMENDMENT

271)    The foregoing paragraphs are realleged and adopted herein.

272)    The Plaintiffs demand a declaratory judgment declaring any person may file an application for a zone map amendment for any property in Long Beach under the ULUO.

### XV.    DECLARATORY JUDGMENT: APPLICATION FOR ULUO VIOLATIONS

273)     The foregoing paragraphs are realleged and adopted herein.

274)    Plaintiffs pray a declaratory judgment declaring the interpretations of the City in their response to the Admin. Comp. dated August 10, 2023 invalid.

275)    Plaintiffs pray for a declaratory judgment declaring ULUO §35 applies to all property in Long Beach, not just subdivisions.

276)    In the alternative, if the above declaration is not made, Plaintiffs pray for a declaration declaring ULUO §35 has no application to individual lots but only applies to the development of subdivisions, and that any individual lots and parcels in Long Beach may be cleared, graded, excavated and structures built without permits or oversight from the City.

277)    Plaintiffs pray for a declaratory judgment declaring application of the Storm Water Management Article was triggered at 6005 Daugherty Road and that its application is ministerial.

278)    Plaintiffs pray for a declaratory judgment that 6005 Daugherty Road exceeds the coverage maximums under C3 and R4 zones.

## XVI.    DECLARATORY JUDGMENT: UNCONSTITUTIONAL PROCEDURES

279)    The foregoing paragraphs are realleged and adopted herein.

280)    The City's custom, practice or policy of refusing to allow public comment on agenda items of the P&D Com'n or BOA is a violation of the state and federally protected rights of the Plaintiffs.

281)    The Plaintiffs pray for a judgment declaring the City's policy or custom of refusing to allow citizen to oppose items on the agenda be declared unconstitutional and that a mandatory injunction issue requiring the City to develop a new policy and training for citizens to be heard, which is to be submitted to the Court for approval before adoption.

## XVII.  DECLARATORY JUDGMENT: WITHOUT AUTHORITY TO OCCUPY OR OPERATE BUSINESS

282)    The foregoing paragraphs are realleged and adopted herein.

283)    The Plaintiffs demand a declaratory judgment that Mr. Simmons and AJS have no lawful authority to operate, occupy, or use the mini-storage building, or Parking Lot at 6005 Daugherty Road, or the metal building at 6011 Daugherty Road until such time as they have cured or received variances from the City for all violations of the ULUO.

284)    The Plaintiffs further pray that Mr. Simmons and AJS be required by mandatory injunction to evict their tenants and remove all property belonging to the Defendants or third parties from the mini-storage building and Parking Lot on 6005 Daugherty Road and from the metal mini-warehouse building on 6011 Daugherty Road.

## XVIII. DECLARATORY JUDGMENT: CITY HAS NO AUTHORITY UNDER THE ULUO TO REGULATE FENCES

285)    The foregoing paragraphs are realleged and adopted herein.

286)    The City stated it has authority to regulate fences but when advantageous to Mr. Simmons and AJS, claimed it does not.

287)    Upon information and belief the City circulates a fence permit application, accepts fees and represents that it regulates fences and has authority to regulate fences to its citizens when it does not.

288)    The Plaintiffs pray for a declaratory judgment declaring the City has no authority to regulate fences in Long Beach.

## XIX.    MANDATORY INJUNCTION TO CURE ULUO VIOLATIONS

289)    The foregoing paragraphs are realleged and adopted herein.

290)    Local zoning authorities must abide by the restrictions of all applicable zoning ordinances. ***Noble v. Scheffler***, 529 So.2d 902, 907 (Miss. 1988) states:

> "In sum, although we have held that the Jackson County Board of Supervisors had the authority to grant Noble the use permit he requested, on this record the Board had no authority to grant special exceptions from the area and setback provisions of Reg. Sec. 6.4. Accordingly, in the present state of the matter, Noble has no lawful authority to operate his real estate and insurance office out of the premises and structure thereon as they presently exist."

291)    ULUO §§68, 69 require advanced notice and hearing before variances can be granted.

292)    ULUO §219 requires advanced notice and hearings before rezoning may occur.

293)    Similarly here, the City had no authority to grant variances from setback requirements, coverage maximums and the Stormwater Management Drainage Article, thus Mr.

Simmons and AJS have no lawful authority to operate there mini-storage and open-parking rental business at 6005 Daugherty Road.

294)    The City has no authority to rezone or grant variances or special uses for 6011 Daugherty Road, where Mr. Simmons and AJS are using a metal mini-warehouse building for commercial enterprise.

295)    Stephen McNally's complaints regarding the construction of the mini-storage building, grading, clearing, and filling of 6005 Daugherty Road and 6011 Daugherty Road were known to Mr. Simmons and AJS during construction in 2021.

296)    The Plaintiffs are authorized to enforce the ULUO:

> A private individual cannot ordinarily maintain an action with respect to the enforcement of a zoning regulation, except where the use constitutes a nuisance per se or the individual has suffered or is threatened with special damage, i.e., injury or threat of injury of a special or peculiar nature amounting to a private wrong affecting his personal or property rights.

***Brooks v. City of Jackson***, 211 Miss. 246, 51 So.2d 274 (1951).

297)    It is unjust and inequitable to allow Mr. Roberts and Mr. Simmons and AJS to continue to enjoy the fruits of their unlawful developments on 6005 and 6011 Daugherty Road while the Plaintiffs' quiet enjoyment of their residential homes, yards and property is shattered by the Defendants unlawful conduct.

298)    While damages can be awarded for the Defendants violations of civil rights, and reimbursement made for attorneys' fees and costs, the ongoing harm caused to the quiet and peaceful enjoyment of the Plaintiff's cannot be addressed by damages– the unlawful commercial uses must cease and the unlawful structures must be removed in order to restore the Plaintiffs' to their previous condition.

299)    "In **Hood v. Foster**, 194 Miss. 812, 13 So.2d 652 (1943), it was held that land is *per se* property of peculiar value and will be protected by injunction without reference to its quality, use, or value...". **Shattles v. Field, Brackett & Pitts, Inc**., 261 So.2d 795 (Miss. 1972).

300)    Public policy favors the enforcement of zoning and land use ordinances. Zoning and land use restrictions are to protect property values, particularly residential property values, and quiet enjoyment of residential properties from overly intense and intrusive commercial and industrial uses.

301)    Further, the Plaintiffs do not have to show irreparable harm for a mandatory injunction to issue when the violation is of a land use regulation:

> The Court had full authority to grant injunctive relief wholly absent any showing of irreparable harm. Implicit in land use regulations enacted for the benefit of the public is that substantial violations per se cause irreparable harm."

**Johnson v. Hinds County**, 524 So.2d 947 (Miss. 1988).

302)    Unusual circumstances exist here, as the City, Mr. Gundlach and John Does colluded and conspired with Mr. Roberts, Mr. Simmons and AJS in harming the Plaintiffs and violating the ULUO.

303)    A mandatory injunction should issue requiring the Defendants to remove all structures built in violation of the ULUO.

304)    The mandatory injunction should include restoration of the natural contours of 6005 and 6011 Daugherty Road or sufficient drainage structure to protect adjacent property owners as required by the Storm Water Management Article.

305)    Stephen McNally has been singled out by the Defendants for disparate treatment, as no other citizen in the history of Long Beach has won an appeal overturning spot-zoning, and

then had the City intentionally subvert the law a second time by illegally spot zoning the subject property again, but without notice.

306)    The Plaintiffs have been singled out among the citizenry of the City based on the City's uniform notice to other citizens of variances and zone change applications.

307)    Plaintiffs have been economically impacted.

## XX.    PRIVATE NUISANCE, TRESPASS AND ULUO ENFORCEMENT BY PRIVATE PARTY

308)    The foregoing paragraphs are realleged and adopted herein.

309)    The Plaintiffs properties are being invaded by excessive illumination, commercial noise, surface waters and rubbish from the Simmon's Properties.

310)    The Plaintiffs seek to restrain Defendants acts of nuisance and trespass under the ULUO and common law.

## XXI.    ATTORNEYS FEES AND COSTS

311)    The foregoing paragraphs are realleged and adopted herein.

312)    Under 42 U.S.C. §1988 the Plaintiffs are entitled to attorney's fees, costs, and expert witnesses fees for violations of their federally protected rights.

## XXII.    PUNITIVE DAMAGES

313)    The foregoing paragraphs are realleged and adopted herein.

314)    The conduct of Mr. Simmons and AJS has been intentional and in reckless disregard for the rights of the Plaintiffs.

315)    Mr. Simmons and AJS took direct action, invading Mr. Armstrong's property and the VOMCK property.

316) Mr. Simmons and AJS bear animosity towards Mr. McNally for challenging the Defendant's unlawful acts and asserting a claim of ownership to 6011 Daugherty Road through the heirs-at-law of the prior owner, who allegedly lost the property for taxes.

317) Mr. Simmons and AJS were desirous of Mr. Armstrong's property and sought to decrease its value to acquire it at less than fair market value.

318) As Mr. Simmons and AJS have acted with malice and reckless disregard, they should be held liable to the Plaintiffs for punitive damages.

**WHEREFORE** premises considered, the Plaintiffs respectfully pray this Court would grant all the relief requested *supra*, and as specifically stated in the following non-exclusive particulars for:

1.     A mandatory injunction ordering Mr. Simmons and AJS to bring 6003, 6005 and 6011 Daugherty Road into compliance with the ULUO by removing all violating structures and fixtures and bringing said properties into a state of compliance;

2.     A mandatory injunction ordering Mr. Simmons and AJS to cease business activity in all buildings and structures operating without valid certificates of occupancy;

3.     A mandatory injunction ordering the construction of a screen around the dumpsters and box bin located at 6003 Daugherty Road and the securing of the rubbish at 6003 Daugherty Road to stop future acts of nuisance and trespass;

4.     A mandatory injunction ordering the City to return 6005 Daughtery Road to its pre-2002 split zone status,

5.     An award of actual damages, attorney's fees and costs be awarded to the Plaintiffs from the Defendants for nuisance, trespass, disruption in residential use and enjoyment of their properties, and more specifically for Mr. Armstrong, either the difference in the sales price of 6015

Daugherty Road to Brandi Viator and the fair market value of 6015 Daugherty, or the difference in the sales price to Brandi Viator and the sale price paid by Mr. Armstrong;

6.      Declaratory judgments decreeing: 1) the City has no authority to issue certificates of occupancy to properties not in compliance with the ULUO and that certificates issued while violations are present are absolute nullities; 2) the interpretations of the ULUO by the City and Mr. Gundlach to refuse to receive Mr. McDade's Zone Map Amendment and denying Mr. McNally's Administrative Complaint are incorrect; 3) the City policy of refusing to allow interested persons to speak in opposition to agenda items when applicants and city employees are allowed to speak in support is unconstitutional 4) the new zoning classification created for Mr. Simmons and AJS is unconstitutional 5) the Storm Water Management Article, once triggered, must be applied or a variance received – it is ministerial, 6) 6005 Daugherty Road exceeds the coverage maximum for C3 and R4 zones, 7) the mini-storage building on 6005 Daugherty Road is built within the side setback and no variance has been granted, 8) §35 of the ULUO either applies to all property in Long Beach, or only to subdivisions and all parcels not belonging to a subdivision may be cleared, graded, excavated and developed without any oversight from the City, 9) the City has not authority to regulate fences, and 10) any person may file an application for a  zone map amendment, including property the applicant does not own;

7.      Alternatively, for this court to set aside the 2002 Rezoning of 6005 Daugherty Road, the building permits, and certificates of occupancy and sit in place of the City as the finder of fact and hear all requests building permits, zone map amendments, administrative complaints and variances;

8.      Alternatively, issue a mandatory injunction ordering Mr. Simmons and AJS to submit building permits, rezoning requests, and requests for variances to the City, and a mandatory

injunction for the City follow its ULUO and provide notice and opportunity to be heard to the Plaintiffs; and,

9.      An award of punitive damages against Mr. Simmons and AJS Properties for their malicious, intentional acts committed with reckless disregard for the Plaintiffs' rights in an amount to be determined by jury.

Plaintiffs also pray for any and all other and further relief, both general and specific, to which they may be entitled under the premises.

**RESPECTFULLY** submitted this the 31st day of January 2025.


RICHARD W. ARMSTRONG                          HARRY BRADSHAW

JUDITH BRADSHAW                          STEPHEN M. MCNALLY,
                                        INDIVIDUALLY AND IN HIS CAPACITY
                                        AS THE PRESIDENT OF VOMCK, LLC


BY:    /s/ Owen R. McNally
       _____
       OWEN R. MCNALLY, MSBN 104777
       Counsel for Plaintiffs
       MCNALLY LAW, PLLC
       4011 Beatline Rd., Suite 10
       Long Beach, MS 39560
       Phone: 228-900-2500/Fax: 228-285-1726
       owen@omcnallylaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Owen R. McNally, do hereby certify that I have this day caused to be filed a true and correct copy of the above and foregoing *Second Amended Complaint with* the Clerk of the Court using the ECF system which will send notification of such filing to all counsel.  Further, I hereby certify that I have mailed by U.S. Postal Service this document to the following: none.


SO CERTIFIED, this the 31st day of January, 2025.

/s/ Owen R. McNally_____